IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-02175-PAB

WILLIAM REX DINGMAN,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER REVERSING THE ADMINISTRATIVE LAW JUDGE**
_____

This matter comes before the Court on plaintiff William Rex Dingman's complaint [Docket No. 1], filed on October 8, 2008. Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On May 17, 2002, Mr. Dingman filed for disability benefits under the Act. R. at 130-32. He alleged a disability onset date of November 11, 2001. R. at 130. After Mr. Dingman's claim was denied at the initial level, R. at 109, an Administrative Law Judge ("ALJ") conducted a hearing, at which plaintiff was not represented. R. at 96. On November 29, 2004, the ALJ determined that plaintiff was not disabled within the meaning of the Act. R. at 103. Mr. Dingman appealed this decision to the Appeals

Council, who remanded his case to the ALJ for consideration of the reports of consultive examiners Neelima Pradhan and Richard Madsen and a function-by-function assessment of plaintiff's ability to perform work-related mental activities. R. at 107. After the remand, the ALJ held a second hearing on June 7, 2006, at which plaintiff was represented by counsel. R. at 17. The ALJ again denied Mr. Dingman's claim, R. at 18, and plaintiff appealed to the Appeals Council, which denied review. R. at 11. Plaintiff filed a complaint in this Court on February 14, 2007 appealing the decision but, before any briefs were filed, the Commissioner moved to remand plaintiff's claim to the ALJ. R. at 338-341. The Commissioner's motion to remand explained that remand was appropriate to reevaluate plaintiff's residual functional capacity ("RFC") and obtain supplemental Vocational Expert ("VE") testimony. R. at 340.

After the second remand, the new ALJ assigned to hear plaintiff's claim held a hearing on April 14, 2008. R. at 487-502. The ALJ received testimony of a VE at this hearing. On June 13, 2008, the ALJ issued a decision denying plaintiff's application for benefits. R. at 314-323. Plaintiff filed exceptions with the Appeals Council, which denied further action. R. at 284, 288. Therefore, the ALJ's denial stands as the Commissioner's final decision on this matter. Plaintiff filed a timely appeal with this Court, making the Commissioner's final decision reviewable. *See* 42 U.S.C. § 405(g) (2006); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the Court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period

of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and

work experience." *Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### B.  The ALJ Decision

In his June 13, 2008 decision, the ALJ reached step five in the sequential five-step analysis. At step one, the ALJ concluded that Mr. Dingman had not engaged in substantial gainful activity from November 11, 2001, his alleged onset date, to December 13, 2004, the date he was last insured. R. at 316. At step two, the ALJ determined that plaintiff had the following severe impairments: history of lumbar strain, degenerative changes at L5-S1, and affective disorder. *Id.* At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. R. at 317.

The ALJ then turned to the task of determining plaintiff's RFC and found that Mr. Dingman had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c), which he explained "involves lifting and carrying fifty pounds occasionally, twenty-five pounds frequently, sitting, standing and/or walking about six hours in an eight-hour workday, and unlimited pushing and/or pulling." R. at 317. The ALJ further restricted plaintiff's RFC to "low stress jobs, involving simple tasks, and minimal interaction with supervisors, coworkers, and the general public." R. at 318.

In applying this RFC at step four, the ALJ found the plaintiff was not able to perform his past relevant work. R. at 322. At step five, the ALJ concluded that, in light of plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. *Id.* In determining the number of jobs plaintiff could perform, the ALJ cited to and interpreted the Social Security Administration's Medical-Vocational Guidelines, as well as the testimony of the VE. R. at 322-23. Based on his step-five findings, the ALJ concluded that Mr. Dingman had not been under a disability, as it is defined under the Act, from his alleged onset date of November 11, 2001 through December 31, 2004, the date he was last insured for Title II benefits. R. at 323.

### C.  Plaintiff's Objections to the ALJ Decision

Plaintiff objects to the weight assigned to the opinions of several medical sources, including plaintiff's longtime treating physician. Plaintiff argues the ALJ's failure to give the proper weight to these opinions resulted in the ALJ formulating an RFC that was not based on substantial evidence. Because the Court agrees with plaintiff that the ALJ erred in not giving controlling weight to the opinion of plaintiff's treating physician regarding plaintiff's mental limitations, the Court need not consider plaintiff's other objections.

#### *1. Consideration of Medical Evidence and Plaintiff's RFC*

Plaintiff takes issue with the ALJ's weighing of nearly all the medical evidence present in the record. Plaintiff first argues that the ALJ erred by assigning no weight to the opinions of his treating physician, Dr. Michael Barris. Pl.'s Br. at 19-24. Plaintiff

further argues the ALJ erred in disregarding the reports of two consultive examiners, Drs. Pradhan and Madsen, who offered opinions as to plaintiff's mental condition. *Id.* at 28. Additionally, plaintiff argues the ALJ erred in giving "considerable weight" to State agency psychiatrist Catherine Corsello's opinion, because Dr. Corsello had no contact with plaintiff and only reviewed his incomplete medical records. *Id.* at 23. Finally, plaintiff argues the ALJ erred by assigning "significant weight" to the opinion of Dr. Fred Crawford, who only performed a single examination of the plaintiff. *Id.* at 21-22.

An ALJ must evaluate every medical opinion in the record, *see* 20 C.F.R. 404 § 404.1527(d); however, the weight given each opinion will vary according to the relationship between the claimant and the medical professional. An ALJ is required to give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to assign controlling weight to the treating source's opinion, he must give "specific, legitimate reasons for his decision." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Ultimately, where an ALJ does not assign a treating source's opinion controlling weight, he must still determine its appropriate weight by looking to the factors which apply to all medical opinions.[1]

---

[1] The factors, as outlined in 20 C.F.R. § 404.1527(d)(2)-(6), include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th

When considering the weight of non-treating sources, the ALJ must consider these same factors; however, an ALJ should generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" him. 20 C.F.R. § 404.1527(d)(1). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.927(f)(2)(ii)).

The various medical opinions the ALJ weighed in this case relate both to plaintiff's physical and mental conditions. Drs. Barris and Crawford offered opinions on plaintiff's physical impairments as well as his mental impairments, whereas Drs. Pradhan, Madsen, and Corsello opined only as to plaintiff's mental impairments. The ALJ gave no weight to the entirety of Drs. Pradhan and Madsen's opinions and discounted some of Dr. Corsello's limitations. R. at 321. Because the record differs as to plaintiff's physical and mental impairments, I will consider the ALJ's treatment of the evidence as to each category of impairments separately.

a. Medical Evidence of Plaintiff's Physical Limitations

The ALJ found that Mr. Dingman suffered the severe physical impairments of history of lumbar strain and degenerative changes at L5-S1, both related to his complaints of low back pain. R. at 316. In assessing how these impairments restricted plaintiff's ability to perform basic work activities, the ALJ considered the medical

---

Cir. 2001).

opinions of Dr. Barris, plaintiff's long-time treating physician, and Dr. Crawford, a physician who performed a consultive examination of plaintiff in June 2000. R. at 321.

The ALJ gave "no weight to Dr. Barris' opinion, despite his status as a treating physician." R. at 321. Dr. Barris opined that plaintiff had "limited ability to lift greater than 10 pounds, push, pull, and sit for extended periods of time without changes in position," and that plaintiff's "lower back condition [would] not result in a recovery." R. at 80, 81. Based on his opinion as to plaintiff's mental condition in addition to his physical impairments, Dr. Barris concluded that "Mr. Dingman is not currently able to perform any meaningful work." R. at 81. The ALJ provided three grounds for his decision to assign Dr. Barris' opinion no weight. First, Dr. Barris offered an opinion on the question of plaintiff's disability, an issue reserved solely to the Commissioner. R. at 321. Second, Dr. Barris' conclusions were "unsupported by the objective, clinical, laboratory, or radiographic findings," as his records did "not reflect any abnormalities such as decreased range of motion, signs of weakness, or loss of strength that support the claimant's allegations, and imaging demonstrated only mild degenerative changes in the lumbar spine." *Id.* Third, Dr. Barris' opinion was "inconsistent with the other substantial medical evidence." *Id.*

The ALJ properly determined that Dr. Barris' opinion concerning plaintiff's physical limitations was not entitled to controlling weight and then considered the relevant factors. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ was not required to discuss each and every factor listed in §1527(d)(2)-(6), so long as he provided "good reasons" for his decision. *See Oldham v. Astrue*, 509 F.3d 1254, 1259 (10th Cir. 2007). The ALJ offered legitimate and specific reasons for rejecting Dr.

Barris' opinion as to the severity of plaintiff's back pain, namely, that it was inconsistent with Dr. Barris' physical examinations and an x-ray which showed only "mild" degenerative changes in plaintiff's spine and otherwise unsupported by objective medical evidence.[2]  *See* R. at 321; *Drapeau,* 255 F.3d at 1213.  Moreover, although Dr. Crawford only saw plaintiff for a single session, he conducted a full physical examination and found plaintiff had only "slight limitations" in his physical abilities.  R. at 423.  The ALJ assigned "significant weight" to Dr. Crawford's assessment of plaintiff's physical capabilities.  R at 321.  Therefore, the ALJ did not err when he gave no weight to Dr. Barris' opinions on the extent of plaintiff's physical limitations.

b.  Medical Evidence of Plaintiff's Mental Limitations

The ALJ found plaintiff suffered from the severe mental impairment of "affective disorder."  R. at 316.  In determining how this disorder impacted his work abilities, the ALJ weighed the opinions of Drs. Barris and Crawford as to plaintiff's mental condition.  He additionally discussed and rejected the opinions of two consultive psychological examiners, Drs. Pradhan and Madsen, who each examined plaintiff once, and a State agency psychological consultant, who reviewed a portion of plaintiff's medical records.[3]

---

[2] Plaintiff argues there was objective evidence in the record supporting Dr. Barris' opinions and cites an occasion Dr. Barris observed plaintiff walking with an "antalgic gait."  Pl.'s Br. at 21; R. at 296.  However, this single objective observation is not enough to demonstrate error in the ALJ's conclusion that Dr. Barris' opinion was unsupported.

[3] The ALJ also discussed a second State Agency consultant who reviewed a portion of plaintiff's medical record; however, the ALJ gave this consultant's opinions "no weight," R. at 321, and the plaintiff does not challenge this analysis.

In considering Dr. Barris' opinions as to plaintiff's mental condition, the ALJ noted that Dr. Barris provided "several statements" as to plaintiff's mental disability and found plaintiff suffered "moderate psychological dysfunction in his mental capacity to work." R. at 321. The ALJ rejected these statements and gave no weight to Dr. Barris' opinion because it was unsupported by objective clinical findings and "inconsistent with the other substantial medical evidence." *Id.*

Despite characterizing Dr. Barris' opinions as inconsistent with substantial medical evidence, R. at 321, the ALJ "failed to sufficiently highlight how the treating physician's evaluations were inconsistent with the other medical evidence presented in the record." *Hamlin*, 365 F.3d at 1219. The ALJ's decision did cite two medical opinions which conflicted with Dr. Barris' opinion as to plaintiff's mental condition. Dr. Crawford administered a Fohlstein mental status exam and a depression screening test to plaintiff. *See* R. at 421, 423. The ALJ assigned Dr. Crawford opinion "significant weight," R. at 321; however, Dr. Crawford primarily conducted a physical examination of plaintiff and even Dr. Crawford provided a caveat to his decision not to include any mental limitations in plaintiff's functional assessment by stating, "I believe it is possible that [plaintiff] may have a potentially treatable [mental] condition if he were to see a physician for evaluation of this." R. at 423.

The ALJ also discussed Dr. Corsello's October 2002 review of plaintiff's medical records. The ALJ assigned "considerable weight" to Dr. Corsello's opinion, yet he also rejected some of her findings as to plaintiff's limited ability to understand, remember, and carry out both simple and detailed instructions because he found these opinions conflicted with plaintiff's reported ability to pay his own bills and drive. R. at 321. As

the plaintiff points out and the Commissioner does not dispute, *see* Pl.'s Br. at 10, Dr. Corsello did not have access to the entirety of plaintiff's medical records, including the consultive examinations of Dr. Crawford and Dr. Pradhan, which significantly limits the weight of Dr. Corsello's opinion.

"When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin*, 365 F.3d at 1215. The ALJ did not perform this analysis here. Instead, he simply declared Dr. Barris' opinion to be "inconsistent" and cited Drs. Crawford and Corsello's opinions as deserving greater weight. He did not explain how their brief examinations outweighed the opinion of plaintiff's long-time physician. *See id.* "In general, treating source opinions should be given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant." *Daniell v. Astrue*, 384 F. App'x 798, 803 (10th Cir. 2010). Instead of following this general rule, the ALJ found the opposite without adequate explanation. Dr. Crawford examined plaintiff once, primarily administering a physical exam, and specifically stated that his opinions did not preclude plaintiff suffering from a medical condition. Dr. Corsello reviewed an incomplete medical record and nonetheless concluded that plaintiff suffered greater impairments than found by the ALJ. *See Daniell*, 384 F. App'x at 803 (noting ALJ improperly discounted opinion of treating physicians in favor of non-examining medical consultant); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not

entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

Moreover, the ALJ rejected the opinions of Drs. Pradhan and Madsen because they were "one-time examinations," while simultaneously affording Dr. Crawford's one-time examination "significant weight."  See R. at 231.  The ALJ stated that these reports were internally inconsistent; however, he only provided an explanation of why Dr. Madsen's report was inconsistent, without mentioning any inconsistency in Dr. Pradhan's report.  His finding that Dr. Madsen's report was inconsistent was based on Dr. Madsen's characterization of plaintiff as having an "anxious mood" while also diagnosing him with depression and somatization disorder.  See id.  However, having an anxious mood is not inconsistent with either condition.  See DSM-IV-TR at 352 (listing anxiety as a frequent associated feature of major depressive episodes).  Dr. Pradhan diagnosed plaintiff with "schizophrenia, chronic, paranoid type, late onset and chronic depression" and assessed a GAF score of 31-40.[4]  Dr. Madsen similarly found plaintiff suffered from "major depression, recurrent, moderate" and "somatization disorder," found plaintiff suffered from "significant memory problems" and assessed a GAF score of 55.[5]  Although these reports were not entitled to the same detailed analysis as Dr. Barris' report, they do demonstrate that there was substantial evidence in the record consistent with Dr. Barris' opinions as to plaintiff's mental condition.  The

---

[4] A GAF score of 31-40 corresponds to "some impairment in reality testing or communication . . . OR major impairment in several areas, such as work, school, family relations, judgment, thinking or mood. . . ." DSM-IV-TR at 34.

[5] A GAF score of 55 corresponds to "moderate symptoms . . . OR any serious impairment in social, occupational, or school functioning . . . ." DSM-IV-TR at 34.

ALJ nonetheless chose to disregard this evidence for inadequately explained and contradictory reasons.

The only other evidence the ALJ cited which contradicts Dr. Barris' opinions on plaintiff's mental health was plaintiff's own failure to seek treatment and willingness to go without medication. R. at 320. But Dr. Pradhan's report explicitly addressed this issue when she stated that plaintiff was "in extreme denial of mental illness, or at least very fearful of admitting the mental illness that he is going through." R. at 207. The ALJ provided no valid reasons for rejecting Dr. Pradhan's report and never considered plaintiff's treatment history in light of his denial. The records of Nicholas Rodriguez, a psychotherapist and licensed clinical social worker, corroborate Dr. Pradhan's assessment of plaintiff's denial. R. at 417-18. Although Mr. Rodriguez treated plaintiff after his insured status expired, his records demonstrate the trajectory of plaintiff's deteriorating mental state.[6] Mr. Rodriguez noted in April 2006 that plaintiff did "not have insight into his problem" and had been on antidepressants but stopped using them because they caused him stomach trouble. R. at 417.

The ALJ did not provide any specific reasons for disregarding Dr. Barris' opinions on plaintiff's mental limitations. Although the ALJ criticized Dr. Barris' opinions generally, the ALJ did not directly discuss how Dr. Barris' opinions as to plaintiff's mental impairment were inconsistent or unsupported. The ALJ failed to give "specific, legitimate reasons" for not assigning controlling weight to Dr. Barris' opinions. *See*

---

[6] Mr. Rodriguez's initial assessment of plaintiff states his wife reported that "over the last three years he has gone through a significant change. He has extreme sleep deprivation. He spends time just staring out into space and he is having difficulty with communication." R. at 416.

*Drapeau v. Massanari*, 255 F.3d at 1213. Dr. Barris' opinions were based on "serial mental status examinations" that took place over many years, R. at 80, which constituted objective support for his opinion that the ALJ did not discuss. The ALJ's discussion of the unsupportability of Dr. Barris' opinions only related to Dr. Barris' opinions regarding plaintiff's physical impairments. *See* R. at 321.

### c. Determination of Plaintiff's RFC

Ultimately, because the ALJ erred in disregarding Dr. Barris' opinions as to plaintiff's mental condition, the ALJ also formulated an RFC that did not reflect the full range of plaintiff's limitations. Dr. Barris opined that beginning in August 2004, before plaintiff's insured status expired, plaintiff was incapable of performing even "low stress" positions because of his "severe depressive symptoms that affect long/short term memory, attention, motivation." R. at 87.[7] This limitation notwithstanding, the ALJ formulated an RFC that limited plaintiff to "low stress" jobs. R. at 318. This RFC was not based on substantial evidence, and the Commissioner has therefore not met his burden at step five. *See Fischer-Ross,* 431 F.3d 729, 731 (10th Cir. 2005).

## III. CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's finding that the plaintiff is not disabled under the Act is not supported by substantial evidence and must be reversed. Accordingly it is

---

[7] Dr. Barris also opined that plaintiff was not capable of performing any meaningful work, R. at 81. However, this opinion was based in part on Dr. Barris' restrictions caused by plaintiff's physical impairments, which the ALJ properly rejected.

ORDERED that the decision by the Commissioner that the plaintiff is not disabled is REVERSED.  This case is REMANDED to the Commissioner for additional proceedings in accordance with this Order.

DATED December 29, 2010.

                                      BY THE COURT:

                                      s/Philip A. Brimmer
                                      PHILIP A. BRIMMER
                                      United States District Judge